JONES, JUDGE:
This claim was filed by Paul W. Holdren, as Committee for Franklin T. Fleming, an incompetent, for damages to the Fleming resident situate about 1,000 feet below State Route 20 on Miller Mountain near Webster Springs. This is one of several homes fronting on the Elk River Road in a community known as Doortown. It was built by Franklin Fleming’s father in 1947, and after his death Franklin and his mother continued to live there until August, 1972, when the home was abandoned because of water damage which rendered it uninhabitable. The Franklins had dug a drainage ditch, about 2 feet wide and 3 feet deep, part of the way up the mountain, and it was connected with a rock culvert near the southeast, rear corner of the residence, leading to an 8 inch pipe laid underground along the side of the residence and extending through the front yard retaining wall. Mr. Holdren, Cashier of the Webster Springs National Bank for many years, was appointed Committee for Franklin Fleming in 1964 and from that time looked after necessary repairs to the residence. He testified that between April 1967, and May 1972, he expended $4,116.70 for repairs, including a new wall in front of the house in March 1972. As a result of accumulation of water and the effects of freezing and thawing, the old concrete block wall had cracked and broken and was beyond repair. Except for structural defects which occasioned these repairs, witnesses for the claimant testified that there was no apparent damage to the home until May 1972, when cracks appeared in the foundation and walls and total deterioration set in.
During the period beginning in March 1972, and ending in August 1972, the respondent, Department of Highways, was engaged in a repair and improvement project on State Route 20 involving widening the highway approximately 6 feet on the upper *76 side, replacing old culvert pipes, installing new concrete drop-inlets, installing curbing designed to channel surface water to the culverts, and blacktopping. The respondent’s inspector on the project testified that the replaced drainpipes were old and bordering on collapse, and that each one was taken up and replaced during the same day. He also testified that after the curbing was completed it did not catch all of the water and some of it did run across the highway and over the lower side due to the imperfect crown of the road grade.
Mrs. Fleming testified that during the night of April 13-14, 1972, heavy rains caused the yard to flood, water oozed through basement walls and parts of the new retaining wall collapsed. A neighbor, Maxine Coakley, viewed the property on the morning of April 14 and saw the broken wall and flooded yard, and she said it looked to her like the water “was coming through under the house and was coming up out of the ground just like one of these artesian wells. I mean it was just bubbling up out of the ground.” Vivian Bennett, who was living with her grandmother and uncle, testified that during the night she heard strange, rumbling sounds under the house like water- running. She had experienced several other rains as hard as this one without any apparent damage. The United States Department of Commerce record of rainfall for Webster Springs shows .10 of an inch for April 13, 1972, and 1.98 inches for April 14, 1972. Other heavy rainfalls for the area were recorded as 1.24 inches on February 26 and 1.14 inches on April 8 of the same year.
The claimant’s contentions of liability are concentrated upon this one flooding incident. He alleges that the highway improvement project of the respondent was so carried on that the course of drainage was changed and excessive quantities of water were gathered and thrown upon the claimant’s property. The respondent says that the project was conducted in a workmanlike and reasonable manner, that the culvert above the Fleming property was replaced by a pipe of equal size, that the location of the new pipe remained the same, and that the drainage was not changed in any appreciable degree. The culvert in question has discharged into the same natural drain for many years, and from the testimony of the respondent’s witnesses it appears that all of the water running through this culvert does not stay in the beginning drain but branches out and a substantial part flows away from the claimant’s property.
*77 It appears from the evidence that the claimant’s property was at least 1,000 feet from State Route No. 20. The residence was located at the foot of a mountain at a point where it has been obvious to the owners that surface water from the mountain must be diverted from the ground at the rear of and underlying the dwelling. Many years ago the ditch was dug which terminated at a point only a few feet from the house, where it entered the rock culvert which witnesses described as a big, dark hole in the ground. No witness could see the end of the pipe known to be near the hole, and it could only be measured where it discharged through the front yard retaining wall. John Sefton, a State geologist, testified that in his opinion both the ditch and the pipe were inadequate to contain the flow of surface water from the area between the highway and the house.
The Court can find little, if anything, that, the respondent has done that in any way could have contributed to this calamity. Conversely, based on all the evidence, direct and circumstantial, the Court believes that the claimant did not provide adequate protection against the ever-present water hazard, as he was required by law to do if his property was to be kept safe from injury. It appears to the Court that one storm did not cause the destruction of the claimant’s home, but that over the years the supporting ground had become so saturated that it approached a condition which Franklin Fleming’s niece described as sounding like a spring. The saturated soil had become so unstable that it could not support the structure and the heavy rain on the night in question was only a contributing factor.
The case of Osborne v. Department of Highways, 10 Ct. Cl. 83, (D-579 and D-634), cited by the claimant and involving the same highway project, is clearly distinguishable. In fact, there is no valid comparison that can be made of the causes and conditions contributing to the damages sustained in the two cases, Wotring v. Department of Highways, 9 Ct. Cl. 138, also cited by the claimant, involved new road construction, the abandonment of an old road, the stopping-up of two culverts adjacent to the claimant’s land, and notice to the State that a hazardous condition existed. None of these circumstances is present in this case.
The State can only be held to the duty, of exercising reasonable care and diligence in the maintenance of its highways. Uhdbr. the law of this State surface water is considered a common énemy which each landowner must fight off as best he can, provided that *78 an owner of higher ground may not inflict injury to the owner of lower ground beyond what is reasonably necessary. The evidence in this case shows that the respondent did conduct its highway improvement project in a reasonably prudent manner; that the respondent did nothing appreciably to increase the flow of water or change the character of the established drainage to the damage of the claimant; and in the Court’s opinion, no act or omission of the respondent proximately caused the damages sustained by the claimant. Accordingly, the claim is disallowed.
Judge Ducker participated in the decision of this case, but his resignation from the Court was effective before this opinion was prepared and approved.
Claim disallowed.